## Case No. 7,192.

The JAMES BOWEN. The L. P. DAYTON. SCOW NUMBER FOUR.

[10 Ben. 430.] [1]

District Court, S. D. New York.    May, 1879.[2]

E. D. McCarthy, for libellant.

W. D. Shipman and Jos. Larocque, for the Bowen and the scow.

R. D. Benedict and J. E. Carpenter, for the Dayton.

CHOATE, District Judge. This is a libel brought by Thomas McNally, the master and owner of a barge called the Centennial, to

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in 4 Fed. 834, and by supreme court in 120 U. S. 337, 7 Sup. Ct. 573.]

recover for the loss of the barge and her cargo by collision. The case has been submitted on the libel and answers. The facts admitted by the pleadings are that the Centennial was, on the evening of February 14th, 1879, after dark, which was the time of the collision, in tow of the L. P. Dayton, being lashed to the steam-tug on her starboard side, and her stem projecting about twenty feet ahead of the bow of the tug; that the tug had another barge or canal boat outside of the Centennial, and a third lashed to her port side; that the L. P. Dayton with her tow was bound down the North river to the Erie Basin, Brooklyn; that the steam-tug James Bowen, from Williamsburg, bound up the North river to some point in Jersey City, had the scow Number Four in tow, lashed to her port side; that about off pier one, North river, the Centennial and the scow Number Four thus in tow of said tugs respectively came in collision, by the effect of which the Centennial was so injured that she and her cargo were totally lost. The libel charges various acts of negligence on each of the tugs. It contains no averments of negligence against the scow Number Four. An answer has been put in for the scow, denying any negligence or responsibility for the collision, and it is conceded that the libel must be dismissed as to the scow. It is claimed, however, for the libellant, that he is entitled to a decree against both the tugs upon the pleadings. First, on the ground that as the Centennial was entirely helpless, having no motive or steering power herself, and as the tugs in their answers do not set up in defence any fault in the Centennial, nor any inevitable accident, but allege only against each other negligence which caused the collision, the burden of proof is on them to prove the allegations by which they severally seek to exonerate themselves by reason of the negligence of the other; and, secondly, on the ground that each of the tugs admits in its answer that it was violating the 18th of the rules for prevention of collisions, that is, that in meeting the other tug coming upon the opposite or nearly opposite course, it starboarded, instead of porting as that rule requires of steam vessels, "meeting end on or nearly end on, so as to involve risk of collision," and that therefore unless this breach of a positive rule of navigation is shown by proof to be excused, the libellant may rest on this admission and is entitled to a decree, and that the burden of showing the excuse, if alleged in the answers, is on the tug.

1. As to the first point, the learned counsel for the libellant cites several cases in support of his position. The Granite State, 3 Wall. [70 U. S.] 310; The Louisiana, Id. 164; The Washington Irving [Case No. 17,243]; The Charlotte Raab [Id. 2,622]; Amoskeag Manuf'g Co. v. The John Adams [Id. 338]; The Sea Nymph, 1 Lush. 23. These are cases of libels brought to recover for injuries re-

ceived by a vessel at anchor or lying at a pier, or a vessel at or immediately before the time of the collision in stays and so having no power to manoeuvre for the purpose of avoiding the danger, except the case of The Washington Irving [supra], which was a libel by a sailing vessel against a steamboat which ran into her while keeping on her course. In all these cases the case shown against the colliding vessel was one in which the libelling vessel was shown either conclusively or prima facie to be without fault and powerless to avoid the injury, and the admission of the collision was itself prima facie proof of negligence of the colliding vessel and of her alone. They, however, are not authorities in favor of this libellant, because his barge, though wholly under the control of one of the tugs, was in motion with that tug, and though, the barge herself was helpless for the purpose of avoiding injury by any movement of her own, yet inasmuch as the injury may have happened through the negligence of either tug, the proof of the helplessness and freedom from fault of the barge only lays the foundation for the conclusion or is prima facie evidence that the collision was caused by the negligence of one or the other or both of the tugs. It is not prima facie evidence of negligence of either, since it is entirely consistent with these facts that it may have been caused wholly by the negligence of the other, nor is there any presumption against either as between the two. Each of the tugs in its answer alleges that it was guilty of no negligence and charges the fault wholly on the other. Of course their answers are not to be taken as evidence against each other. This is not, therefore, a case like those cited where the answer admits or the proof shows a state of facts constituting a prima facie case of negligence and the matter relied on in excuse or explanation is strictly justificatory or excusatory matter as to which the party alleging it assumes the burden of proof; but quite the contrary, it is a case where the facts admitted do not raise any presumption of fault against either of the accused parties.

2. As to the second point taken, I think a fair construction of the answers of the claimants does not support the position that either of the tugs admits that it was acting in violation of the 18th rule of navigation. The answer of the L. P. Dayton admits that the tugs were approaching on opposite or nearly opposite courses, and alleges that it was a case in which each was bound to pass the other on the starboard side; that the Dayton took proper measures to do so, but that the Bowen failed to give heed to her signals, and by her negligence brought the tows together. There is not an admission here that the tugs were, in the language of the 18th rule, meeting "end on or nearly end on, so as to involve risk of collision." It is obvious that two vessels may be proceeding

on directly opposite courses, and yet not be meeting "end on or nearly end on," or proceeding so as to involve danger of collision. The question, whether this rule imposes an obligation on the two vessels to port, depends partly on the distance between the courses on which the two vessels are proceeding, nor does the rule preclude vessels from passing on the starboard side of each other, if the movement for that purpose is seasonably commenced and executed.

The answer of the James Bowen does not admit that the two tugs were meeting "end on or nearly end on," so as to involve risk of collision;" on the contrary, while it admits that each tug blew two whistles as if with the purpose of passing each other on the starboard side, and that the Bowen did starboard for that purpose, yet, in stating the relative positions of the two vessels when the Bowen made the Dayton and when this manoeuvre was commenced on the part of the Bowen, I think the fair meaning of the answer is, that the Dayton was on a course nearly opposite to that of the Bowen, but so far to the eastward of it that the vessels were not meeting "end on or nearly end on, so as to involve risk of collision," and therefore that it was not a case within the 18th rule, and that the collision was caused by the Dayton's not keeping her course, but by her changing her course to the westward, and notwithstanding the movement of the Bowen in the same direction, coming in collision with the Bowen's tow by attempting to cross her bows. Neither answer, therefore, admits the violation of the 18th rule. Libel dismissed, with costs to the several claimants.